## HYATT MANAGEMENT CORPORATION OF NEW YORK, INC., Petitioner,

### v.

## NATIONAL LABOR RELATIONS BOARD, Respondent.

### No. 86–1396.

United States Court of Appeals, District of Columbia Circuit.

Argued March 9, 1987.

Decided May 1, 1987.

---

Lawrence D. Levien, with whom Paul M. Eskildsen and David L. Kern, Washington, D.C., were on the brief for petitioner.

Karen Cordry, N.L.R.B., with whom Robert E. Allen, Associate Gen. Counsel and Elliott Moore, Deputy Associate Gen. Counsel, N.L.R.B., Washington, D.C., were on the brief, for respondent.

Before WALD, Chief Judge,
EDWARDS and D.H. GINSBURG,
Circuit Judges.

Opinion for the Court filed by Circuit Judge EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

The present action presents a petition for review of a decision of the National Labor Relations Board ("NLRB" or the "Board"). Because we find the Board's decision to be fully consistent with controlling law and based on substantial evidence, the petition for review is denied.

## I. BACKGROUND

Petitioner Hyatt Management Corporation ("Hyatt" or the "Company") operates a coliseum in Uniondale, New York. On December 13, 1983, Hyatt entered into negotiations with Local Union No. 30 and 30A of the International Union of Operating Engineers, AFL–CIO ("Local 30" or the "Union") to reach a collective bargaining agreement (the "Agreement") that would supersede the parties' existing contract, which was due to expire on December 31, 1983. The parties reached final accord on the terms of a new three-year contract on March 20, 1984, and agreed that the Company would prepare a final draft for the Union's signature. It is undisputed that the contract was final at this time, and was not conditioned on ratification by the Union's membership. However, after the Company sent the final draft to the Union on March 27, the Union failed to sign it and instead proposed a number of substantive changes. On October 2, 1984, Hyatt filed

an unfair labor practice charge against the Union with the National Labor Relations Board. While awaiting action by the Board, Hyatt did not attempt to implement the terms of the Agreement.

The Administrative Law Judge ("ALJ") found, and the Board agreed, that the Union had violated section 8(b)(3) of the National Labor Relations Act ("NLRA" or the "Act"), 29 U.S.C. § 158(b)(3) (1982), by refusing to execute the agreed-upon contract. *Local Union No. 30 & 30A, Int'l Union of Operating Engineers*, 280 N.L.R.B. No. 18 (1986). The ALJ and the Board disagreed, however, on the appropriate remedy. Although the Board adopted the ALJ's recommendation that the Union be ordered to cease and desist from its refusal to bargain, it rejected his recommendation that Local 30 be ordered to extend the Agreement to run for three years from the date of execution. The Board held that such a remedy "would give the parties contractual terms for which they never bargained, for it would apply particular wages, terms, and conditions of employment for a period of time different from that during which the parties intended those wages, terms, and conditions to apply." *Id.* at 3. Instead, the Board ordered the Union to execute the Agreement on its original terms, which included an expiration date of December 31, 1986. *Id.*

Hyatt subsequently filed this petition for review, arguing that, because the Board's order did not issue until May 30, 1986, the contract should have been extended for another two-and-one-half years to give the employer the benefit of a full three-year agreement. Thus, Hyatt argues, the Board failed to make the aggrieved party whole and thereby abdicated its duty under 29 U.S.C. § 160(c) (1982)[1] to "effectuate the policies of th[e Act]."

We find the petition for review to be wholly without merit. Therefore, for the reasons set forth below, we affirm the judgment of the Board.

## II. DISCUSSION

The Board's decision reveals that it carefully considered and rejected the ALJ's suggestion that extending the contract for a full three years would be an appropriate remedy for the Union's unfair labor practice. The Board determined that such a remedy would compel the Union to abide by a contract term to which it had never agreed—that is, a "1989" expiration date—and was therefore foreclosed by the Supreme Court's holding in *H.K. Porter Co. v. NLRB*, 397 U.S. 99, 90 S.Ct. 821, 25 L.Ed.2d 146 (1970). 280 N.L.R.B. No. 18, at 2–3. We agree.

 One of the clearest violations of the duty to bargain occurs when a party repudiates an agreed-upon and lawful collective bargaining contract. In such a situation, the Board is authorized to order the offending party to execute and honor the agreement. In *NLRB v. Strong*, 393 U.S. 357, 89 S.Ct. 541, 21 L.Ed.2d 546 (1969), where an employer had refused to execute an agreement negotiated by a multi-employer association on its behalf, the Court upheld an order requiring the employer not only to sign the agreement but also to pay accrued benefits pursuant to the terms of the agreement. *Strong* makes it plain that "[t]he purpose of the Board's order to 'honor' the contract is merely to restore the parties to their position prior to repudiation." R. GORMAN, BASIC TEXT ON LABOR LAW 455 (1976). It is also absolutely clear under *Strong*, however, that the Board's remedial order is limited by the precise terms of the parties' agreement. In other words, "[a]s broad as are the remedial powers of the Board in bargaining cases, the Supreme Court has held that those powers must be limited by other policies of the Labor Act, one of which is the impropriety of government determination of substantive contract terms." *Id.* at 535.

---

1. That section provides, in relevant part:

 If upon the preponderance of the testimony taken the Board shall be of the opinion that any person named in the complaint has engaged in or is engaging in any ... unfair labor practice, then the Board shall state its findings of fact and shall issue and cause to be served on such person an order requiring such person to cease and desist from such unfair labor practice, and to take such affirmative action ... as will effectuate the policies of this [Act].

This latter principle was enunciated in *H.K. Porter*, where the Supreme Court held that, while the Board has the authority to compel enforcement of the terms of a negotiated agreement, it cannot compel enforcement of terms that are not contained in that agreement. 397 U.S. at 102, 90 S.Ct. at 823. In short, it is an elementary principle of law under the NLRA that the Board has no power to issue an order imposing a substantive contract term not actually agreed upon.

██ In the instant case, the Board found that the unexecuted contract specified that the Agreement would commence on January 1, 1984, and ·expire on December 31, 1986. That is, by its express terms the contract was to run for the period of time *between those two dates*, and not for an unspecified three-year period commencing on the date of execution.[2] The Board therefore reasoned that under *H.K. Porter* it had no authority to alter the parties' chosen expiration date: "Whether the parties would have agreed to such conditions for the new period—a period with economic conditions and outlooks different from those existing during the original period—is something we cannot say." 280 N.L. R.B. No. 18, at 3.

██ The Board's reasoning and conclusion are clearly correct under *Strong* and are a natural extension of the holding in *H.K. Porter*. Where, as here, a party's sole unfair labor practice is its refusal to sign an agreed-upon contract, the Board is only authorized to compel that party to sign and ·adhere to the contract. If there is no other unfair labor practice to remedy, no additional remedy is authorized. In this case, Hyatt is seeking a punitive remedy that *H.K. Porter* and *Strong* make clear is not within the Board's discretion to provide. *H.K. Porter*, 397 U.S. at 102, 90 S.Ct. at 823; *Strong*, 393 U.S. at 359, 89 S.Ct. at 543.

The Board was therefore correct in concluding that *H.K. Porter* bars it from compelling the Union to abide by terms to which it never agreed. In addition to *H.K. Porter*, other cases have made it clear that the Board has no "discretion" to grant relief that is patently inconsistent with the policies of the Act. *See, e.g., Virginia Elec. & Power Co. v. NLRB*, 319 U.S. 533, 540, 63 S.Ct. 1214, 1218, 87 L.Ed. 1568 (1943) (Board's remedy must stand "unless ... the order is a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the Act"); *United Steelworkers v. NLRB*, 646 F.2d 616, 630 (D.C.Cir.1981) (Board has no power to "punish" offending parties). The Act does not authorize the Board to compel a party to agree to a particular contract term, and an agreement's expiration date is certainly a "contract term." Thus, the Board in this case could hold the Union only to the exact terms of the exact contract to which the Union had agreed.[3]

Cases subsequent to *H.K. Porter* have recognized that neither the courts nor the Board can change or nullify substantive contractual provisions. *E.g., Conair Corp.*

---

2. Before this court, Hyatt challenges the Board's interpretation of the Agreement's duration provision, contending that the parties actually intended to specify an indefinite three-year term, and that the specific dates selected were merely "markers" rather than bargained-for terms. On the record before us, this contention is specious. Furthermore, we note that Hyatt failed to raise this issue before the Board. Therefore, because the issue was not raised below, Hyatt is barred from raising it in a petition for review, absent "extraordinary circumstances" which are clearly not present in this case. 29 U.S.C. § 160(e) (1982).

3. In support of the ALJ's proposed remedy, the petitioner relies heavily on the Board's decision in *Mead Corp.*, 256 N.L.R.B. 686 (1981), *enforced*, 697 F.2d 1013 (11th Cir.1983). In *Mead*, an employer violated sections 8(a)(1) and (5) of the Act by withdrawing a contract proposal at a time when it knew that acceptance by the union was imminent. The Board determined that merely ordering the employer to bargain in good faith upon request would be inadequate to "effectuate the policies of the Act, but rather [would] allow Respondent to profit from its unlawful conduct," and concluded that its duty to compel the employer "to take such affirmative action ... as will effectuate the policies of th[e] Act" required it to restore the *status quo ante* by ordering the respondent to reinstate its withdrawn offer for a "reasonable" time. *Id.* at 686. The Board rejected the argument that such a remedy was barred by *H.K. Porter:* "Unlike *H.K. Porter*, the remedy that we order herein merely requires Respondent to do what it had previously agreed to do." *Id.* at 687.

*v. NLRB,* 721 F.2d 1355, 1381–84 (D.C.Cir. 1983), *cert. denied,* 467 U.S. 1241, 104 S.Ct. 3511, 82 L.Ed.2d 819 (1984); *Pacemaker Yacht Co. v. NLRB,* 663 F.2d 455, 460 (3d Cir.1981); *NLRB v. Independent Ass'n of Steel Fabricators,* 582 F.2d 135, 149 (2d Cir.1978), *cert. denied,* 439 U.S. 1130, 99 S.Ct. 1049, 59 L.Ed.2d 91 (1979). Other cases have made it clear that the Board may not itself prescribe the effective date of a contract. *E.g., East Bay Chevrolet v. NLRB,* 659 F.2d 1006, 1009–11 (9th Cir. 1981); *Fisk Univ.,* 237 N.L.R.B. 1164, 1171–72 (1978), *enforced,* 625 F.2d 133 (6th Cir.1980); *Raven Indus., Inc.,* 209 N.L.R.B. 335, 335 n. 2 (1974), *enforced as modified,* 508 F.2d 1289 (8th Cir.1974). The petitioner offers nothing to contravene this well-established and well-reasoned authority.

We therefore hold that the petitioner's challenge to the Board's decision is without merit, and we deny the petition for review.

One obvious difference between *Mead* and the instant case is that the employer in *Mead* was ordered to do what it had already agreed to do. The clause which the employer withdrew from the bargaining table in *Mead* had no expiration date, and thus by ordering the employer to place the clause back on the table at a later date, the Board did not effectively alter the terms of the clause. The other obvious response to Hyatt's *Mead* argument is that if the employer in *Mead* had not withdrawn the proposed clause, and the union had agreed to it, the clause would have bound the parties even after the term of the agreement had expired, until the parties bargained to impasse or the union acceded to the employer's request to change it. *See Hinson v. NLRB,* 428 F.2d 133, 136 (8th Cir. 1970) (terms of expired collective bargaining agreement continue to bind parties until they reach new agreement or bargain to impasse). Thus, the fact that the contract to which the proposed clause in *Mead* was to have been attached had expired before the Board ordered the proposal reinstated did not bar the reinstatement. *Mead* would have been more pertinent to this appeal if the reinstated clause had specified its *own* time limit, for then the case would have posed the question whether the Board may order a party to reinstate its offer of a contract term after the term itself has expired.